IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SALLY KAMMERER and KARL KAMMERER, | ) ) ) | 8:04CV196 |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| WYETH and WYETH PHARMACEUTICALS, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on the defendants' motions for summary judgment in their favor on the following claims:  all of plaintiffs' claims for lack of admissible evidence, Filing No. 90; plaintiffs' claims for punitive damages and attorney fees, Filing No. 93; all of plaintiffs' claims based on the statute of limitations, Filing No. 96; plaintiffs' strict product liability design defect claim, Filing No. 99; plaintiffs' claims of fraudulent misrepresentation, Filing No. 102; and plaintiffs' negligence, fraudulent misrepresentation, strict product liability failure to warn, and breach of express warranty claims, Filing No. 105.

This is a pharmaceutical products liability action.  The plaintiffs allege that hormone therapy medication manufactured by the defendants (hereinafter, collectively, "Wyeth") caused plaintiff Sally Kammerer's breast cancer.  The case was transferred by the Judicial Panel on Multidistrict Litigation to United States District Court for the Eastern District of Arkansas to be combined with similar cases.  The case was remanded to this district for trial.

I.  STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial.  *Id.* at 324.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party."  *Id. at* 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted.  *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

II. DISCUSSION

A. Lack of Admissible Evidence

The defendants' position on this motion is based on the outcome of the defendants' motions pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). See Filing No. 53, Filing No. 57, Filing No. 63, Filing No. 68, and Filing No. 72. Wyeth argues that the plaintiffs will be unable to prove their case without the testimony challenged in the *Daubert* motions. The court's resolution of the *Daubert* motions in favor of the plaintiffs is dispositive of the issue and the motion will be denied.

B. Punitive Damages and Attorney Fees

1. Punitive Damages

Wyeth argues that it is entitled to judgment on the punitive damages claim because punitive damages are not permitted under Nebraska law.

Jurisdiction in this case is based on diversity of citizenship. The plaintiffs are citizens of Nebraska and Wyeth is a citizen of Pennsylvania. It is a fundamental rule of law in this state that punitive, vindictive, or exemplary damages are not allowed. *Abel v. Conover*, 104 N.W.2d 684, 688 (Neb. 1960). In Nebraska, "the measure of recovery in all

3

civil cases is compensation for the injury sustained." *Id.*  In Pennsylvania, punitive damages may be awarded for conduct that is intentional, reckless or malicious. *Hutchison v. Luddy,* 870 A.2d 766, 770 (Pa. 2005) (also holding that a showing of ordinary negligence is not enough to warrant punitive damages).

In diversity cases, the forum state's choice of law rules govern.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Inacom Corp. v. Sears, Roebuck and Co.,* 254 F.3d 683, 687 (8th Cir. 2001) (a district court sitting in diversity must apply the conflict of law rules for the state in which it sits); *see, e.g., Enron Corp. v. Lawyers Title Ins. Corp.,* 940 F.2d 307, 308-313 (8th Cir. 1991) (conducting a Nebraska choice of law analysis to determine the law covering the issue of punitive damages).  In deciding choice of law questions, Nebraska follows the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS. *Inacom Corp.,* 254 F.3d at 687.  "The Restatement also recognizes the doctrine of "dépecage," under which "the law of different states [is] applied to resolve different issues in the same case." *Ewing v. St. Louis-Clayton Orthopedic Group, Inc.,* 790 F.2d 682, 686 (8th Cir. 1986).

In a personal injury action, the question of whether to apply the law of the state where the injury occurred or the law of another state is a question of law. *Yoder v. Cotton,* 758 N.W.2d 630, 635 (Neb. 8th Cir. 2008).  In choice-of-law determinations for personal injury claims, Nebraska follows the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1971). *Malena v. Marriott Intern., Inc.,* 651 N.W.2d 850, 855 (Neb. 2002).

Section 146, the starting point for any choice-of-law analysis in a personal injury claim, provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) § 146 at 430; *see Yoder,* 758 N.W.2d at 635 (Neb. 2008).  Under § 146, a presumption arises in favor of the place of the injury unless another state "has a more significant relationship to the parties and the occurrence with respect to a particular issue."  *See Malena*, 651 N.W.2d 856.  Section 146, "presumes that the law of the state where the injury occurred determines the rights and liabilities of the parties 'unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties.'" *In re Derailment Cases*, 416 F.3d 787, 794-95 (8th Cir. 2005) (quoting Restatement (Second) Conflict of Laws § 146).

The "most significant relationship" is determined with reference to Section 145 of the Restatement, which lists the contacts that a court should consider when determining which state has the most significant relationship to the parties and to the occurrence under general conflict-of-law principles.  *Id.*  That section provides that the court should consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2).

Comment e of section 146, addresses the situation in which conduct and injury occur in different places:  "The local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there."

Restatement (Second) of Conflict of Laws § 146, Comment e.  The interest of plaintiff's domicile has little relevance with respect to punitive damages since punitive damages are designed to punish a defendant, not to compensate a plaintiff.  *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 612–13 (7th Cir. 1981).  Similarly, where the place of injury is largely fortuitous, it is that state's "interest in and ability to control behavior by deterrence or punishment, or to protect defendants from liability, is lower than that of the place of misconduct or principal place of business."  *Id.* at 615.  "The likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties."  Restatement (Second) of Conflict of Laws § 146, Comment c.

The section 145 contacts must be balanced in accordance with their significance to the general principles set out in the Restatement (Second) § 6(2), which include the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied.  *Malena*, 651 N.W.2d at 856-57; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(a)-(g).  These principles must raise concerns sufficient to overcome the section 146 presumption, buttressed by the application of the section 145 contacts, that Nebraska law applies to the punitive damages issue.  *See In re Derailment Cases*, 416 F.3d at 795.

When dealing with tort claims, the Nebraska Supreme Court has held that the more relevant principles are the "the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states *and particularly of the state with the dominant interest in the determination of the particular issue*, and ease in the determination and application of the law to be applied." *Malena,* 651 N.W.2d at 857 (quoting RESTATEMENT, § 145, comment b. at 416) (emphasis in *Malena*). Every state has an interest in compensating its domiciliaries for their injuries and "tort rules that limit liability are entitled to the same consideration when determining choice-of-law issues as rules that impose liability." *Malena*, 651 N.W.2d at 857. Moreover, "[a] state's choice-of-law rules should recognize a foreign state's dominant interests in a fairly predictable manner" or "the rules will neither encourage harmonious, interstate relations nor ease the determination of which law to apply." *Id.*

In Nebraska, punitive damages are not recoverable because they contravene Neb. Const. art. VII, § 5, which provides that fines and penalties should be appropriated exclusively to public schools in the subdivisions in which they arise. *Distinctive Printing & Packaging Co. v. Cox*, 443 N.W.2d 566, 574 (Neb.1989). Nebraska has a policy interest in recognizing and placing a value on the actual injuries suffered by its domiciliaries, and a "clear constitutional prohibition" against punitive damages. *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 313 (8th Cir. 1991) (noting that the relevant policies of the two states are the proper focal point). The plaintiffs have not presented a "specific expression of support" for Pennsylvania's policy of permitting punitive damages sufficient to overcome Nebraska's strong interest. *See id.*; *Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 348 (3d Cir. 2000) (holding that Pennsylvania's interest in punishing those who harm

its citizens was outweighed by Puerto Rico's interest in regulating the activity that occurs in its territorial waters); *Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487, 493 (E.D. Pa. 2010) (holding that Maine's interest outweighed Pennsylvania's with respect to punitive damages— "as the place where the drugs were prescribed and taken by one of its citizens, [Maine] has a strong interest in applying its law to conduct that allegedly caused an injury in its borders); *Bearden v. Wyeth*, 482 F. Supp. 2d 614, 622 (E.D. Pa. 2006) ("Arkansas has a greater interest in applying its laws to protect and provide redress for a citizen who was prescribed a drug, received any relevant representations or warnings about it, purchased it, ingested it, and was injured by it—all within his home state of Arkansas.").

Applying the above analysis, the court finds Nebraska has the most significant relationship to the punitive damages claim at issue. Although Pennsylvania has an interest in deterring future wrongdoing by its resident corporations, that interest does not overcome Nebraska's strong public policy interest in prohibiting punitive damages.

In the present case, the injury occurred in Nebraska. The conduct that caused the injury arguably occurred at Wyeth's corporate headquarters in Pennsylvania in that corporate decisions were made there, but certain conduct, specifically, the marketing and promotion efforts, alleged misrepresentations, deceptive practices, or omissions that could trigger a punitive damages award, occurred in Nebraska, wherein marketing efforts were aimed at Nebraska physicians and Nebraska residents. Nebraska physicians prescribed Wyeth's hormone therapy medications, allegedly in reliance on its representations, in Nebraska. The prescriptions were filled and the medications purchased in Nebraska. Mrs. Kammerer was diagnosed with and treated for breast cancer in Nebraska. The place where th injury occurred was hardly fortuitous. The relationship between the parties is

centered in Nebraska. The domicile of the plaintiffs is Nebraska and Wyeth is incorporated in Delaware and has it principal place of business in Pennsylvania, although it sells and markets its products in Nebraska and does business in this state. In this case, the relationship between plaintiffs and Wyeth arose from the plaintiff's purchase and use of the defendants' product in Nebraska.

The court finds the focal point of the contacts is Nebraska. Nebraska is where the injury occurred, as well as where at least some of the conduct that arguably caused the injury occurred, and Wyeth regularly does business and markets its products in this state. Based on the record, a strong presumption exists that the law of the place of injury, Nebraska, governs the substantive issues herein, unless plaintiffs can demonstrate that Nebraska bears little relation to the occurrence and the parties, or put another way, that Pennsylvania has a more significant relationship to the occurrence and the parties with respect to a particular issue.

Based on the contacts with the State of Nebraska, coupled with the clear mandate that Nebraska does not permit punitive damages as a matter of law and public policy, the court finds that defendants' motion for summary judgment as to punitive damages should be granted.

### 2.  Attorney Fees

Unlike substantive matters that are subject to a choice of law analysis, procedural matters are dictated by the law of the forum. *Nebraska Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472, 517 (Neb. 2001). Nebraska law deems the recovery of attorney fees in the action in which they are incurred to be a procedural issue governed by the law of the forum. *Id.* at 518. Under Nebraska law, attorney fees and expenses may be recovered

9

only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.  *Id.*  The plaintiffs have not provided the court with any statutory basis for an award of fees, nor have they shown that there is any uniform course of procedure that would allow recovery of attorney fees.  The court finds that the defendants' motion for summary judgment should be granted with respect to the plaintiffs' attorney fees claim.

### C.  Statute of Limitations

Wyeth asserts that the plaintiffs' claims are barred by the applicable statute of limitations.  It contends plaintiff Sally Kammerer knew of a possible causal link between her hormone therapy medications and her breast cancer more than four years before she filed this lawsuit on April 23, 2004.  This action is governed by the four-year statute of limitations provided in Neb. Rev. Stat. § 25-224.  Under Nebraska law, the statute of limitations does not begin to run in until after a plaintiff discovers, or with reasonable diligence should have discovered, the injury.  *Condon v. A.H. Robins*, 349 N.W. 2d 622, 626 (1984).  In other words, "'discovery of the act or omission occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action.'"  *Kraft v. St. John Lutheran Church*, 414 F.3d 943, 946-947 (8th Cir. 2005) (quoting *Reinke Mfg. Co. v. Hayes*, 590 N.W.2d 380, 390 (Neb. 1999)).  It is undisputed that Ms. Kammerer's breast cancer was diagnosed in April of 2000.  The National Institutes of Health ("NIH") Women's Health Initiative ("WHI") Prempro Study, which revealed a risk of breast cancer linked to Wyeth's drug, Prempro, that outweighed its benefits, was released on July 9, 2002.  The plaintiffs filed this action on April 23, 2004.

The court finds that Wyeth's argument is foreclosed by the Eighth Circuit Court of Appeals ("Eighth Circuit") decision affirming the district court's finding that the statute-of-limitations defense presented a jury question in a hormone therapy products liability action. *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 564-65 (8th Cir. 2009). In that case, the Eighth Circuit concluded that "a jury could find that [the plaintiff's] cause of action accrued at some point after the publication of the WHI study's results," reasoning that the defendants, including Wyeth, changed their products' labeling significantly following the publication of the WHI findings, devoting substantial label space to the results of the study," the WHI results "were widely covered in mainstream media, and Prempro sales have dropped by fifty percent since 2001, suggesting that the WHI study did more than affirm that which was already known." *Id.* at 564.

The record shows there are disputed issues of fact with respect to when the statute of limitations began to run in the plaintiffs' case. Wyeth has not established, as a matter of law, that the plaintiff knew or should have known that she had a cause of action at the time of her diagnosis of breast cancer. Again, resolution of the issue will involve assessments of credibility. The point at which the cause of action accrued is a question for the jury. Accordingly, the defendants' motion for summary judgment on this issue will be denied.

### D. Strict Product Liability Design Defect Claim

The plaintiffs have withdrawn this claim and the motion for summary judgment thereon will be denied as moot.

### E. Fraudulent Misrepresentation

Plaintiffs have indicated that they are withdrawing their fraud claim, while reserving the right to put on evidence that Wyeth made negligent, knowing, or intentional

misrepresentations or omissions of fact in connection with their punitive damages claim. Accordingly, the defendants' motion for summary judgment on this issue will be denied as moot.

F.     Negligence, Fraudulent Misrepresentation, Strict Product Liability Failure to Warn, and Breach of Express Warranty

Wyeth claims that it is entitled to summary judgment on plaintiffs' claims of negligence, fraudulent misrepresentation and strict product liability.  It argues that undisputed evidence shows that it adequately warned plaintiff Sally Kammerer's physicians, that Ms. Kammerer's physicians did not rely on the label, and there is no proof that a different warning would have caused her physicians to refrain from prescribing the drug.  The record shows that there are genuine issues of material fact with respect to those issues that foreclose summary judgment.  There is evidence that the prescribing physicians were familiar with Wyeth's Prempro warnings, and testimony that the warnings were inadequate.  Also, there are disputed issues of fact with respect to reliance and the reasonableness of any such reliance.  Resolution of the issues will involve assessments of credibility.  The Eighth Circuit has held that evidence similar to that presented herein is sufficient to establish proximate causation.  *In re Prempro,* 586 F.3d at 557.  Viewing the record evidence in the light most favorable to the plaintiffs, the court finds there are genuine issues of material fact with respect to whether Wyeth's Prempro labeling was inaccurate, unclear, and ambiguous; whether physicians were fully apprised of the breast cancer risk; and whether different warnings would have prevented doctors prescribing or the plaintiff from taking Prempro.  Further, there are issues of fact with respect to what Wyeth knew of breast cancer risk, when it knew of the risk and how effectively it conveyed

the information to doctors and patients.  The court finds the motion for summary judgment should be denied.  Accordingly,

IT IS ORDERED:

1.  Defendants' motion for summary judgment on all of plaintiffs' claims for lack of admissible evidence (Filing No. 90) is denied.

2.  Defendants' motion for summary judgment on plaintiffs' claims for punitive damages and for attorney fees (Filing No. 93) is granted.

3.  Defendants' motion for summary judgment on all of plaintiffs' claims based on the statute of limitations (Filing No. 96) is denied.

4.  Defendants' motion for summary judgment on plaintiffs' strict product liability design defect claim (Filing No. 99) is denied as moot.

5.  Defendants' motion for summary judgment on plaintiffs' claims of fraudulent misrepresentation (Filing No. 102) is denied as moot.

6.  Defendants' motion for summary judgment on plaintiffs' negligence, fraudulent misrepresentation, strict product liability failure to warn, and breach of express warranty claims (Filing No. 105) is denied.

DATED this 1st day of November, 2011.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.